UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY Q. FORD, | ) | CASE NO. 1:17CV1694 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Bobby Q. Ford ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on January 4, 2018, Plaintiff asserts that the administrative law judge's ("ALJ") decision was not based on substantial evidence and included a residual functional capacity ("RFC") finding that did not accurately portray his RFC. ECF Dkt. #12. Defendant filed a response brief on February 5, 2018. ECF Dkt. #14. Plaintiff filed a reply brief on February 20, 2018. ECF Dkt. #15.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on April 15, 2014. ECF Dkt. #10 ("Tr.") at 178.[2] The applications were denied initially and upon reconsideration. *Id.* at 95-96, 212-22.

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather than the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

Plaintiff then requested a hearing, which was held on April 19, 2016. *Id.* at 38. On June 7, 2016, the ALJ issued a decision denying Plaintiff's claims. *Id.* at 7. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the June 7, 2016, decision issued by the ALJ stands as the final decision.

The instant suit was filed by Plaintiff on August 14, 2017. ECF Dkt. #1. On January 4, 2018, Plaintiff filed a brief on the merits. ECF Dkt. #12. Defendant filed a response brief on February 5, 2018. ECF Dkt. #14. Plaintiff filed a reply brief on February 20, 2018. ECF Dkt. #15.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

In May 2014, Plaintiff was diagnosed with anxiety, agoraphobia with panic disorder, and depression by Mohammad Naeem, M.D. Tr. at 301. The following month, Dr. Naeem noted that Plaintiff displayed improvement with medication and that his symptoms were aggravated by social interactions. *Id.* at 295. In November 2014, Plaintiff completed a health questionnaire indicating that on "more than half the days" he: had little interest or pleasure in doing things; felt down, depressed, or hopeless; felt tired or had little energy; had trouble concentrating; and spoke so slowly that others could have noticed. *Id.* at 377. Further, Plaintiff marked that nearly every day he: had trouble sleeping or slept too much; had a poor appetite or trouble eating; felt bad about himself; and he thought that he would be better off dead. *Id.* Dr. Naeem provided Plaintiff with three letters indicating that he could not work for mental health reasons from 2014 through 2016. *Id.* at 396, 397, 430.

A consultative examiner, James N. Spindler, M.S., determined in August 2014 that Plaintiff had a full scale IQ of fifty-seven, a verbal comprehension score of sixty-eight, and a perceptual reasoning score of sixty-three. Tr. at 280. It was noted that Plaintiff appeared to be functioning in the borderline range of intelligence. *Id.* Mr. Spindler diagnosed Plaintiff with: unspecified depressive disorder, mild; unspecified anxiety disorder, mild; borderline intellectual functioning; and attention-deficit/hyperactivity disorder ("ADHD"). *Id.* at 281. Further, Mr.

Spindler opined that Plaintiff appeared to be handling the stressors in his life reasonably well and that it seemed likely that he would respond appropriately to routine work pressures. *Id.* at 282.

Courtney Zeune, Psy.D., and Leslie Rudy, Ph.D., reviewed Plaintiff's records in September 2014 and December 2014, respectively. Tr. at 75, 87, 101, 113. Dr. Zeune and Dr. Rudy opined that Plaintiff would have mild restrictions in activities of daily living, moderate restrictions in social functioning, moderate restrictions in maintaining concentration, persistence, and pace, and that he had no episodes of decompensation. *Id.* Both Dr. Zeune and Dr. Rudy determined that Plaintiff likely functioned in the borderline range. *Id.*

### B. Testimonial Evidence

A hearing was held on April 19, 2016, with Plaintiff, his attorney, and a vocational expert ("VE") present. Tr. at 38, 40. On examination by the ALJ, Plaintiff testified that he lived with his mother and her fiancé, and that he did not help with chores around the house but that he could sometimes prepare simple meals such as a bowl of cereal or a sandwich. *Id.* at 46-47. Plaintiff then testified that he had a one bedroom apartment and that his "rent and stuff" was paid for due to "hardship." *Id.* at 47. Continuing, Plaintiff testified that he had been living at the apartment for about one and a half years, and that his mother helped him clean his apartment. *Id.* at 47-48. When asked additional questions about the apartment, Plaintiff testified that it had a bedroom, bathroom, living room, and kitchen. *Id.* at 48. Plaintiff testified that he did not wash his own laundry and that he used food stamps to purchase groceries. *Id.* at 49. When asked whether he went shopping, Plaintiff stated that he could go "or somebody can get it for me." *Id.* Plaintiff testified that he had a driver's license but that he only drove "on special occasions" and to get to appointments or fill prescriptions. *Id.*

Regarding his education, Plaintiff testified that he received help while in school and was in special needs classes in high school. Tr. at 50. Plaintiff stated that he had an assistant in school to help him with reading and "stuff like that." *Id.* The ALJ then asked Plaintiff how he spent a normal day. *Id.* at 51. Plaintiff stated that he kept his apartment dark because the sunlight bothered him and that he spent most of his day resting. *Id.* Continuing, Plaintiff testified that he watched television or listened to music occasionally. *Id.* at 51-52. Plaintiff

stated that he did not have any friends in his apartment complex and that he kept to himself because he became nervous when he was around many people. *Id.* at 52. Next, Plaintiff stated that he spent time with his sister and her children when they visited. *Id.* Plaintiff testified that he did not read. *Id.* at 52-53. When asked whether he visited with friends, Plaintiff indicated that he did not see any friends or spend any time playing video games. *Id.* at 53.

Plaintiff testified that his last job was pushing materials on a cart in a factory in 2012. Tr. at 53. When asked about the physical requirements for this job, Plaintiff stated that he stood most of the day and pushed roughly ten car seats on his cart, and that he did not lift the seats. *Id.* at 54. Plaintiff testified that he lost this job due to the factory closing down in 2012. *Id.* at 55. Next, Plaintiff indicated that his other job had been at Burger King where he "dropped buns" in the toaster. *Id.* Plaintiff stated that his only role at Burger King was toasting the buns, which he performed while standing. *Id.* Continuing, Plaintiff indicated that he did not remember why he left his job at Burger King. *Id.*

On examination by his attorney, Plaintiff testified that he obtained his prior jobs through a friend and that he did not fill out applications for the jobs. Tr. at 57-58. Plaintiff stated that his mother was his care provider and provided him with any help that he needed. *Id.* at 59. Continuing, Plaintiff indicated that someone read the test to him when he obtained his driver's license. *Id.* Plaintiff then testified that he began having problems with his eyes three or four years prior to the hearing and that he had headaches or passed out if he experienced a lot of light without wearing his sunglasses. *Id.* at 60-61. When asked about his anxiety and depression, Plaintiff testified that he could not sleep and thought about harming himself. *Id.* at 61. Plaintiff then stated that his sister visited every day and his mother visited every other day. Tr. at 61. Plaintiff also indicated that he visited his sister and mother at their homes. *Id.*

Next, the ALJ questioned the VE. Tr. at 62. The VE indicated that he was unsure how to characterize Plaintiff's prior work of dropping buns into the toaster, but characterized the job as a cook helper. *Id.* at 64. Continuing, the VE characterized Plaintiff's work at the factory as a material handler. *Id.* The ALJ then posited a hypothetical individual of the same age, education, and work experience of Plaintiff who could perform a full range of exertional work and simple

-4-

routine tasks consistent with unskilled work with no fast pace or high production quotes and with infrequent changes that are easily explained in advance and introduced gradually. *Id.* at 65. Additionally, the ALJ indicated that the hypothetical individual could have superficial contact with coworkers and supervisors for a specific purpose, and no direct contact with the general public (meaning customer service work). *Id.* The VE testified that this hypothetical individual could perform Plaintiff's past work. *Id.* Continuing, the VE indicated that such an individual could also perform work as a laundry worker, kitchen helper, and industrial cleaner, and that additional jobs existed that Plaintiff could perform. *Id.* at 66. The ALJ then further limited the hypothetical individual and included the limitation that the individual would be off task twenty percent of the time. *Id.* The VE indicated that there would be no jobs for the hypothetical individual with this added limitation. *Id.*

Plaintiff's attorney then questioned the VE. Tr. at 67. When asked about the impact of adding the limitation that the hypothetical individual, as stated by the ALJ prior to adding the limitation of being off task twenty percent of the time, could not be in sunlight, the VE indicated that some employers would have darker areas and that it was not clear if wearing sunglasses would be an issue for these jobs. *Id.* at 68-69. Following the VE's questioning by Plaintiff's attorney, the ALJ concluded the hearing. *Id.* at 70.

### III.     RELEVANT PORTIONS OF THE ALJ'S DECISION

After the hearing, the ALJ issued a decision on June 7, 2016. Tr. at 10. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. Tr. at 12. Continuing, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since November 30, 2012, the alleged onset date. *Id.* The ALJ then determined that Plaintiff had the following severe impairments: borderline intellectual functioning; ADHD; affective disorder, major depressive disorder with mild recurrent episodes; and anxiety disorder, panic disorder with agoraphobia. *Id.* Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 13.

After considering the record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: simple routine tasks (unskilled work) with no fast pace of high production quotas and with infrequent changes where the changes were explained in advance and introduced gradually; superficial contact (meaning of a short duration and for a specific purpose) with coworkers and supervisors; and no direct work with the general public (*i.e.*, customer service type work). Tr. at 15. The ALJ then stated that Plaintiff was capable of performing past relevant work as a material handler and that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 18. For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 30, 2012, through the date of the decision. *Id.* at 20.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (citations omitted).

## VI. LAW AND ANALYSIS

### A. Substantial Evidence

Plaintiff first asserts that "[t]he ALJ lacked substantial evidence to find that [Plaintiff] did not meet the requirements of Listing 12.05." ECF Dkt. # 12 at 11. Continuing, Plaintiff states

that the ALJ accepted the full scale IQ score of fifty-seven but found that Plaintiff did not meet the requirements of Listing 12.05 because he did not have deficits in adaptive functioning before age twenty-two. *Id.* According to Plaintiff, this finding lacked the support of substantial evidence because the ALJ failed to review the record as a whole and mischaracterized other evidence. *Id.*

Next, Plaintiff avers that he met the requirements of Listing 12.05B since the ALJ accepted the full scale IQ score of fifty-seven and Plaintiff had adaptive deficits before age twenty-two. ECF Dkt. #12 at 12. Listing 12.05B may be satisfied by:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part test) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information; or

    b. Interact with others; or

    c. Concentrate, persist, or maintain pace; or

    d. Adapt or manage oneself; and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Listing 12.05B (internal citations omitted). Plaintiff states that the ALJ correctly noted that he had normal communications, got along with students and teachers, and played sports; however, according to Plaintiff, he was also diagnosed and educated as a student with intellectual disabilities. *Id.* at 13-14. Continuing, Plaintiff indicates that school personnel found that his adaptive behavior suggested deficits in two or more of the applicable skill areas. *Id.* at 14.

-8-

Plaintiff claims that this same conclusion was reached on his determination of eligibility form for an individualized educational program ("IEP").

Next, Plaintiff asserts that the ALJ only cited to part of the record when stating that he participated in the general curriculum with great success with only some modifications. ECF Dkt. #12 at 14. Specifically, Plaintiff states that he: was in special needs classes and had special assistants; was in special needs classes through the eighth grade; never lost the status of needing special education; was in special needs classes in all of his core classes in high school and only the electives were mainstreamed; and was only able to participate in mainstream classes with extraordinary support. *Id.* Plaintiff also states that he received the following accommodations to complete his academic requirements: extended time; small group testing; the opportunity to read tests; a modified grading scale; rewards; use of a calculator, text books, notes, old tests, and paraphrased questions from teachers; and an explanation of directions so that he could understand. *Id.* According to Plaintiff, the ALJ understated his deficits when stating that he had "only some modifications" in his education. *Id.* at 15. Additionally, Plaintiff states that the ALJ also heralded his "great success" in the general curriculum, but that this "great success" was merely receiving an A in his vocational class. *Id.* Likewise, Plaintiff states that his 3.0 GPA was only because of his remedial classes. *Id.* For these reasons, Plaintiff claims that he had deficits in adaptive functioning prior to age twenty-two. *Id.*

Plaintiff also avers that the ALJ selectively evaluated the evidence of his functioning after age twenty-two. ECF Dkt. #15 at 15. Continuing, Plaintiff states that the ALJ's assessment of his functioning was erroneous as the record as a whole showed significant ongoing deficits in adaptive functioning. *Id.* at 16. Plaintiff states that he did very little, if anything, independently compared to other individuals of the same age who were not developmentally handicapped. *Id.* As for the activities that he performed, Plaintiff states that he could: take care of his personal hygiene by taking a shower; prepare a bowl of cereal or a sandwich and use the microwave; and do household chores when asked. *Id.* Plaintiff notes that he did not wash laundry and that his mother, who was his caregiver, visited approximately every other day to help where it was needed. *Id.* Regarding his work history, Plaintiff states that he obtained both jobs through

someone from his special education classes and did not need to file applications. *Id.* Plaintiff also notes that he was only required to perform one task at both prior jobs, and that this was so unusual the VE had never had a client that performed only one task at work. *Id.*

Defendant contends that the ALJ properly found that Plaintiff did not meet the requirements of Listing 12.05. ECF Dkt. #14 at 10. Specifically, Defendant states that when evaluating Plaintiff's level of adaptive functioning, the ALJ considered the educational records and found that despite Plaintiff's intellectual deficits he: participated in the general curriculum with "great success" and with only some modifications; participated on the high school wrestling and football teams; and graduated high school at age eighteen with a 3.011 GPA. *Id.* Defendant also indicates that the ALJ considered Plaintiff's activities of daily living and assessed only a mild restriction, noting that Plaintiff cared for his personal needs, drove himself, and could perform housework when asked. *Id.* Additionally, Defendant states that Plaintiff testified at the hearing that he had lived in his own apartment for one and a half years. *Id.* at 11. Defendant continues, indicating that the ALJ also considered Plaintiff's level of social functioning and noted that he was able to maintain relationships with friends and family. *Id.*

Next, Defendant avers that the ALJ found Plaintiff's ability to maintain employment at the level of substantial gainful employment was inconsistent with the requisite deficits in adaptive functioning. ECF Dkt. #14 at 11. Defendant states that immediately proceeding his alleged disability onset date, Plaintiff had worked for eleven months as a material handler at a factory before being laid off. *Id.* Additionally, Defendant asserts that evidence suggesting the a claimant stopped working for reasons other than disability can detract from allegations of disability. *Id.* (citing *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004)). Continuing, Defendant states that the ALJ also found that the fact that Plaintiff applied for and received state unemployment benefits after his alleged onset date was at odds with his claim of disability. *Id.* Defendant asserts that the Sixth Circuit has deemed applications for unemployment and disability benefits "inherently inconsistent," finding "no reasonable explanation for how a person can claim disability benefits under the guise of being unable to

work and yet file an application for unemployment benefits claiming that he is ready and willing to work." *Id.* at 11-12 (quoting *Workman*, 105 F. App'x at 801).

Continuing, Defendant states that the VE testified that an individual of Plaintiff's age, education, work experience, and RFC limitations was capable of performing past relevant work as a material handler, and the ALJ properly relied on this testimony when finding that Plaintiff was not disabled. ECF Dkt. #14 at 12 (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504. 512-13 (6th Cir. 2010)). Moving on to the ALJ's reliance on the educational record, Defendant asserts that the Sixth Circuit has repeatedly affirmed an ALJ's findings of non-disability under Listing 12.05B in cases where the claimant received special education instruction, especially where the evidence demonstrated an ability to work or perform other activities inconsistent with a listing-level adaptive deficit. *Id.* (citing *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 434 (6th Cir. 2016); *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 585, 587 (6th Cir. 2013); *Foster v. Halter*, F.3d 348, 352, 354-55 (6th Cir. 2001)).

Additionally, according to Defendant, Plaintiff's contention that the ALJ relied on a faulty analysis of the educational record lacks factual merit. ECF Dkt. # 14 at 13. Defendant states that Plaintiff cites a school psychologist's notation of "significantly subaverage general intellectual functioning" with "deficits in two or more applicable skill areas," but the educational record contains no basis for this psychologist's conclusions other then the psychologist's vague assertion that they were based on "current data available." *Id.* Further, Defendant notes that the record does not identify the "two or more applicable skill areas" in which Plaintiff was deficient. *Id.* Defendant asserts that Plaintiff acknowledged at the hearing that the record does not contain IQ test scores that were taken before Plaintiff reached age twenty-two. *Id.*

Turning to Plaintiff's IQ testing in August 2014, Defendant states that although Mr. Spindler determined Plaintiff's full-scale IQ score to be fifty-seven to be within the range of mild intellectual disability, he noted that Plaintiff nonetheless appeared "to be functioning in the borderline range of intelligence." ECF Dkt. #14 at 14 (quoting Tr. at 280). Defendant also states that despite Plaintiff's suggestion the Mr. Spindler's basis for diagnosing borderline

-11-

intellectual functioning, rather than mild intellectual disability, is unknown and that there was little information obtained about his activities of daily living, Mr. Spindler's report was based on a detailed interview in which Plaintiff discussed his living situation, relationships with family and friends, educational activity, work history, and daily activities. *Id.* Moreover, according to Defendant, Mr. Spindler did not rely solely on Plaintiff's IQ test scores and activities of daily living when diagnosis borderline intellectual functioning, but rather cited his clinical observations as a whole. *Id.* Defendant also notes that both state agency psychologists, Dr. Zeune and Dr. Rudy, also diagnosed borderline intellectual functioning. *Id.* at 15.

Continuing, Defendant states that Plaintiff also challenges the ALJ's finding that he was able to participate in the general curriculum with "great success" with only some modifications by contrasting the finding with a note from the record indicating that Plaintiff would receive special education for his core subjects and regular classes for electives and gym, although he conceded that he had began regular classes for his core courses but still remained in special classes up to fifty percent of the time. ECF Dkt. #14 at 15. Defendant points out that, in fact, both of the records cited by Plaintiff are from the same IEP for the 2001-2002 school year. *Id.* Next, Defendant states that the ALJ did not overlook the classroom modifications received by Plaintiff. *Id.* at 16. Defendant asserts that the record shows that Plaintiff succeeded when he began taking mainstream classes for many of his core subjects and all of his electives. *Id.* at 17. Additionally, Defendant indicates that one semester before Plaintiff graduated from high school a teacher wrote that he had "participated in the general curriculum with great success." *Id.* Defendant also states that Plaintiff's claim that his "great success" was receiving an A in his vocational class is at odds with the record and his teacher's assessment. *Id.* Additionally, Defendant notes that this same teacher wrote that Plaintiff had passed his courses with modifications and that he should be able to demonstrate an ability to read for comprehension, write paragraphs containing correct punctuation and details, and perform basic math. *Id.*

Defendant then claims that when taking issue with the ALJ's analysis of his daily activities, Plaintiff minimizes the fact that he lived on his own at the time and had worked for nearly a year at levels reaching substantial gainful activity. ECF Dkt. #14 at 17-18.

-12-

Additionally, Defendant states that Plaintiff's contention that his past relevant work was poor evidence of his adaptive abilities also fails. *Id.* at 18. Specifically, Defendant states that Plaintiff's suggestion that his work as a material handler and cook helper was so unusual that the VE had never seen anything similar is flawed because the VE only made any such statement relating to Plaintiff's job at Burger King. *Id.* Defendant asserts that it was the material handler job, not the cook helper job, where Plaintiff performed work reaching substantial gainful activity levels that the ALJ found inconsistent with a listing-level adaptive deficit. *Id.*

Plaintiff's argument is essentially that the ALJ's finding that the record did not support the conclusion that Plaintiff's disorder presented significant deficits in adaptive functioning that manifested prior to the age twenty two, per the requirement of Listing 12.05B, is not supported by substantial evidence. *See* ECF Dkt. #12 at 11-17. This argument is without merit. Regarding Listing 12.05, as well as other listings considered, the ALJ stated that Plaintiff had only mild restriction in his activities of daily living and that the record shows that he: is able to take care of personal grooming, such as showering; remained capable of shopping for food, clothing, and other items; drove; and attended to household chores if asked. Tr. at 13. The ALJ found that Plaintiff had moderate difficulties in social functioning, and reported that he: tended to avoid being around large crowds, but was still capable of going about the community; had good relationships with family and friends; and often displayed an appropriate mood and affect. *Id.* Regarding concentration, persistence, and pace, the ALJ found that Plaintiff had moderate difficulties, noting that he: endorsed difficulty concentrating and was observed to be easily distractible; was often noted to be fully oriented; could recall five of five objects after a delay; was able to perform subtraction; and participated in various activities of daily living such as driving and shopping in stores. *Id.* The ALJ also noted that Plaintiff had not experienced any episodes of decompensation. *Id.*

Turning specifically to Listing 12.05, the ALJ indicated that although Plaintiff received a full-scale IQ score of fifty-seven and was noted to have significantly subaverage intellectual functioning, there was no evidence of listing-level deficits in adaptive functioning initially manifesting before age twenty-two. Tr. at 14. The ALJ then stated:

-13-

> Here, while in school, [Plaintiff] was noted to have normal communication abilities, and he was noted to have participated in the general curriculum with "great success" with only some modification. Further, [Plaintiff] reported that he generally got along with students and teachers, and he also played on the school football and wrestling teams. Moreover, [Plaintiff] was able to graduate high school and even maintained a 3.011 GPA. Thus, there is no evidence of listing level deficits in adaptive functioning initially manifesting before age 22. Moreover, since the age of 22, the undersigned notes that [Plaintiff] is able to partake in various activities of daily living, noted above, is able to maintain social relationships with friends and family, and has been able to maintain employment at substantial gainful activity levels for periods, which is inconsistent with a finding of listing level deficits in adaptive functioning. Thus, the requirements of listing 12.05 are not met.

*Id*. (internal citations omitted). As stated above, the substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole*, 661 F.3d at 937. Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers,* 486 F.3d at 234. Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "zone of choice within which [an ALJ] can act without the fear of court interference." *Buxton*, 246 F.3d at 773.

The ALJ's finding that deficits in adaptive functioning did not manifest before Plaintiff reached age twenty two is supported by substantial evidence. First, the ALJ cites a summary of Plaintiff's progress in his IEP at age eighteen. Specifically, the summary states:

> [Plaintiff] has participated in general curriculum with great success. He is currently receiving an A in his vocational class. [Plaintiff] has participated in the general curriculum and has passed the courses with some modifications. Additional prioritized needs for [Plaintiff] include extended time, small group for testing, and an opportunity to read.

Tr. at 219. Continuing, the ALJ noted that Plaintiff got along well with other students and teachers, and played on his school's football and wrestling teams. *Id.* at 14. The ALJ also stated that Plaintiff graduated high school and maintained a 3.01 GPA. *Id.* Each of these reasons, which the ALJ provided when finding that there was no evidence of listing-level deficits in adaptive functioning prior to age twenty-two, was supported by citations to the record. *See id.*

-14-

The Court is required to affirm the ALJ's decision if it is supported by substantial evidence that a reasonable mind might accept as adequate to support that decision. " *Cole*, 661 F.3d at 937. Here, the ALJ cited evidence showing that Plaintiff had the adaptive functioning prior to age twenty-two to pass high school courses with some modifications such as additional time, small group testing, and an opportunity to have test questions read to him. Further, the ALJ cited evidence showing that Plaintiff got along well with other students and teachers, and was capable of playing football and wrestling at the high-school level. The ALJ also noted that Plaintiff's grades were generally good and that he was able to graduate high school with a 3.01 GPA. The Sixth Circuit has repeatedly affirmed an ALJ's findings of non-disability under Listing 12.05B in cases where the claimant received special education instruction, especially where the evidence demonstrated an ability to work or other activities inconsistent with a listing-level adaptive deficit. *See Joyce*, 662 F. App'x at 434; *Peterson*, 552 F. App'x at 540; *Justice*, 515 F. App'x at 585, 587; *Foster*, F.3d at 352, 354-55. Further, although not directly applicable to Plaintiff's adaptive functioning prior to age twenty-two, the ALJ indicated that Plaintiff's activities of daily living after age twenty-two, such as maintaining relationships with friends and family and maintaining employment at substantial gainful activity levels, were inconsistent with a finding of listing-level deficits. *Id.* at 14-15.

For these reasons, the ALJ's decision was supported by substantial evidence. While Plaintiff cites evidence in the record that he claims to be contradictory to the ALJ's decision, the standard is whether the ALJ cited relevant evidence as a reasonable mind might accept as adequate to support a conclusion, not whether evidence existed in the record that supports a different conclusion. The ALJ cited evidence showing that Plaintiff was able to maintain passing grades in his high school courses with some modifications, got along well with other students and teachers, and could play high-school level sports. These findings constitute substantial evidence in support of the ALJ's decision. Accordingly, the undersigned recommends that the Court find that the ALJ's decision is supported by substantial evidence.

### B.     RFC Finding

Plaintiff also asserts that the ALJ's RFC finding does not accurately portray his limitations as the ALJ failed to include all of the functional limitations, and therefore did not issue a decision that is supported by substantial evidence. ECF Dkt. #12 at 17. Specifically, Plaintiff claims that ALJ omitted any consideration of his photophobia in the RFC finding after finding photophobia to be a non-severe medically determinable impairment. *Id.* at 17-18. Plaintiff avers that the VE's ambiguous testimony regarding his photophobia does not constitute substantial evidence for the ALJ conclusion that there were jobs that Plaintiff could perform. *Id.* at 18.

Defendant contends that the ALJ fully accounted for Plaintiff's impairments in the RFC finding. ECF Dkt. #14 at 19. Continuing, Defendant asserts that Plaintiff relies on his own testimony indicating that too much unprotected exposure to sunlight could cause him to experience headaches and pass out. *Id.* Defendant notes that the only medical evidence cited by Plaintiff is a disabled parking placard prescribed by Dr. Naeem due to photophobia. *Id.* Additionally, Defendant points out that Plaintiff does not cite any other medical evidence documenting these restrictions despite his regular treatment for other medical issues. *Id.* Defendant asserts that, for these reasons, the VE's testimony that no jobs would be available to someone who could not be exposed to light is of no import since the evidence fails to support such a limitation. *Id.* at 19-20.

The undersigned agrees with Defendant that the evidence does not indicate that Plaintiff's photophobia constitutes a functional limitation that was required to be addressed in the RFC finding. The only evidence cited by Plaintiff regarding his photophobia was a treatment note from July 2015 in which Dr. Naeem prescribed a handicapped placard. ECF Dkt. #12 at 19. The treatment note does not further elaborate on the severity or nature of Plaintiff's photophobia other than noting that it was a new application for the handicapped parking placard and the placard would need to be renewed in five years. Tr. at 366-70. Due to the lack of medical evidence in the record regarding photophobia and the fact that the only evidence of photophobia

was the issuance of a handicapped parking placard, indicating that Plaintiff's photophobia was not so limiting that he did not feel comfortable enough to operate a motor vehicle, the undersigned finds that the ALJ did not error when no mention of photophobia was made in the RFC finding. Accordingly, the undersigned recommends that the Court find that the ALJ's RFC finding accurately portrays Plaintiff's limitations and is supported by substantial evidence.

### VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: July 20, 2018                     */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).